Good morning. We will call the first consolidated case and I assume Mr. Vanderhood is going to begin. Thank you for taking the time to organize this for yourselves and for us. We appreciate that. Thank you very much, Your Honor. And appearing with me is Stephanie Goldsboro, Stacey Tolchin from our office on the Cedano case, and Mr. Amiglis on Ramirez, and Ms. Nelsey and Mr. Robin on Huerta-Guevara. The question before the Court today is whether the BIA can, consistent with due process and established rules of administrative law, eviscerate the right to appeal established in the regulations and the right to a reasoned decision by an appellate body. When you say eviscerate the right to appeal, you still have the appeal to come to us, right? So how is the Constitution offended? How have your rights to appeal been eviscerated if you still have full access to United States Courts of Appeal on direct review and district courts on habeas corpus review in this case? Well, actually, Your Honor, we don't have full rights in administrative appeal, but the reality is since the 1996 amendments to the Immigration Act through IRA, IRA, there's actually quite limited review in the federal courts now. Courts of Appeal, but the Supreme Court has given, I think, petitioners also, I will say, emboldened appellate remedies through habeas corpus, has it not? Only in certain circumstances, Your Honor. What the Supreme Court said in the St. Cyr decision is that legal issues can be taken to the federal courts by writ of habeas corpus, even if the Immigration Act precludes, it appears, direct review in the Court of Appeals. But as to discretionary determinations, the Board of Immigration Appeals is the last resort now. This Court, under the Kalaugh decision, has said there's no review in the Court of Appeals on discretionary determinations, and there's a slew of cases saying that same thing. And the St. Cyr decision was limited to legal issues, that is, questions of law or Constitution. And, in fact, when Congress was enacting IRA, IRA, it specifically discussed the fact that there would be an appeal to the Board of Immigration Appeals, and that was an important element of its consideration. Give me that again. Congress said that there shall be, will be, must be, is going to be? Noted that there would be. Noted where? In the legislative history, Your Honor. Legislative history. There's an awful lot of stuff in the legislative history. All I'm saying, Your Honor, is that the importance of having an appeal to the BIA was noted when Congress stripped the federal courts of this legislation. You mean some legislator said? Correct, Your Honor. Correct, Your Honor. But Congress did not establish any right, entitlement, or otherwise, to have a matter heard by a BIA after an immigration judge. Is that right? Well, Congress, the Board of Immigration Appeals is referred to in the statute, Your Honor, and is stated that that is the final decision of the agency. But in terms of stripping the courts of jurisdiction, that is the federal courts of appeals, Congress did discuss the fact that there would still be appeals to the Board of Immigration Appeals, and that is the appeal. You still have the appeal, right? I mean, you're only, instead of three decision makers, you have one. Well, in many cases, it's not at all three, Your Honor, because many of the decisions of the Board of Immigration Appeals or the agency, whether it's the immigration judge or the Board of Immigration Appeals, deal with discretionary relief from deportation. Persons deportable, they apply for something called, like, or 212C relief, which was involved in the Magana case, or cancellation of removal, which is a remedy now in discretion of the attorney general, to grant or not grant. But the courts, this court and then every circuit court that has addressed the issue, have said that there is no review in the Court of Appeals any longer, and the language in the St. Cyr case would certainly lead one to conclude that there will be no habeas corpus of that. I'm not sure you understood my question. Maybe I didn't phrase it very well. There still is a BIA. There are still people who are appointed to sit as members of that board. But as I read the regulations, there are fewer cases where three members will sit in review. Now there are many more cases where only one BIA member will hear the appeal. So how have you been denied your right to appeal? Let me clarify, Your Honor. We are not challenging the issue whether it's one judge or three judge. We're not. That's not our issue with the regulation. Our issue with the regulation is that under the procedure, the Board of Immigration Appeals doesn't have to state its reason at all. Matter of fact, it's prevented from stating its reason on appeal. Have you ever practiced in one of the federal circuits where you get affirmed from three judges? Yes, Your Honor. But the difference, and I think it's an important difference, and I have had that, there is an important difference in that the regulation specifically says that the reasoning of the immigration judge below is not necessarily adopted. Only the conclusion. So what does that leave us with? That leaves the federal courts in the cases where there is an appeal still with an agency decision that says we affirm the result. We don't necessarily adopt the reasoning. You're using a funny word, necessarily. I don't think that word is in the regs, is it? Yes, Your Honor. It's at HCFR 3.1A7. And what it says is the decision below is the final agency decision. Right. An order affirming without opinion issued under authority of this provision, and then it says, shall not include further explanation or reasoning, specifically prohibited from stating the reasons. Such an order, and this is a quote from the regulation, approves the result reached in the decision below. It does not necessarily imply approval of all of the reasoning of that decision. How come? Because you get review of the immigration judge's decision by this court. Well. It's a better deal for you than to get it from the BIA. But, Your Honor, you don't get review in a lot of cases. For instance, the issue of, for instance, the case that was, the fourth case that was consolidated before you, the Gonzales-Gallegos case, is a good example. In that case, the individual was denied suspension of deportation by the immigration judge on the finding that there was no extreme hardship. If there were legal error in that determination, we could review it. You could, Your Honor, but if I could have a minute to try to explain. I understand you're saying the factual determination that that particular individual wouldn't suffer extreme hardship is a discretionary decision that's not reviewable. Correct, Your Honor. But in that case, there were three issues litigated before the immigration judge, all of which were contested. One was, was there extreme hardship? The second was, was there continuous physical presence established? And the third requirement also, was there good moral character, because there was a conviction in that case. So all three issues were being litigated. The immigration judge only reached the one, reached extreme hardship, and said, I don't find extreme hardship. Under the Kala decision, that is unreviewable in this court, and that is the final agency determination, if the Board of Immigration Appeals doesn't have to rule. The Board of Immigration Appeals adopts the decision, adopts the result, but not the decision, not the reasoning, excuse me. The Board of Immigration Appeals could very easily, under this regulation, have said, well, we may disagree with the immigration judge on the extreme hardship determination, but we've looked at this record, and we don't think there was continuous physical presence established. So we affirm the result, even though we don't agree with the reasoning. And what are we left with? That decision cannot be appealed to the court. The legal issue, which the agency ultimately ruled on, in its opinion, it said, I'm putting the result because harmless error. Why? Because even though there was not, there was extreme hardship established, there wasn't continuous physical presence. The court doesn't know that. This court doesn't know that. There's no ability to go into the Court of Appeals on the continuous physical presence issue. Why? If the immigration judge's decision, which is reasoned, is correct, we'll say so. If it's incorrect, we will say so. No, you won't. If it's legally incorrect. It can't get to you. It will under the law. There is an issue of law on which it was incorrect. That is true, Your Honor. But what I'm saying in this decision, in Gonzales-Gallegos, the immigration judge denied based on lack of extreme hardship. Under CAW, that can't be reviewed by you. What happened to Gonzales-Gallegos? Pardon? What happened to Gonzales-Gallegos? The Board of Immigration Appeals reopened the case. It's not here anymore? On an ineffectiveness of the counsel claim. No, Your Honor. But what I'm pointing out is the types of cases where this becomes a very significant problem because you have no review on the decision made by the immigration judge because of extreme hardship and the agency itself. You don't have review. You don't have the level of review that you would prefer. Review in this court, I meant. I'm sorry. You have review in the BIA. It's just not the level of explanation that you would prefer. When you say you don't have review, in fact you do. You file a brief. You make your pitch. The BIA, through one member, looks at it and says, in effect, this is squarely controlled by existing precedent. It's an insubstantial issue of fact or law that's raised. Or if there was any error, it's harmless error. So you do, in fact, get review, and somebody has made that determination. And you can move to reconsider. No, you can't, under the regulation, move to reconsider that, Your Honor. Really? Correct. You can't move to reconsider the use of the Affirmative Without Opinion process. Oh, I understand. But you could move to reconsider the result. Well, there's nothing to do. You could in theory, but you wouldn't know how the board ruled because it doesn't give any reasoning. It seems to say it was spread out wrong. But you don't know on what basis, Your Honor. And the positive thing I'm saying is that you do, in fact, know what the IJ did. That's correct. And that's either right or wrong. That is correct. But in the example I gave you, the Board of Investigation and Appeals has determined that that decision was wrong, yet it upholds the result because it believes that continuous fiscal precedent wasn't established. And there you have a situation where there's no remedy whatsoever in the court because you have a result affirmed, but it's not the reasoning. And that's the problem. What the Supreme Court has said in Chenery, Your Honor, is that the reason that it's so important for an administrative agency, and not a federal court, but an administrative agency, to explain the reasoning of the decisions is the court can't assume the basis for it. And yet we have, specifically by regulation, the board not affirming the reasoning of the immigration judge necessarily and not stating its own reason. So there's nothing for this court to review because the final decision-maker, the Board of Immigration and Appeals, hasn't adopted... Well, is that the final decision-maker? Yes, Your Honor, it is. There's an appeal to the Board of Immigration and Appeals as of right. And so because you have an appeal as of right, there's got to be a meaningful review of that decision. But the decision, the final agency decision for purposes of judicial review, is the immigration judge's decision. At that point. Only because the Attorney General has said so in a regulation, Your Honor, but in reality it's not. The Board of Immigration and Appeals has reviewed that, has made the determination, and has perhaps changed the decision in essence, the reasoning for it, because it doesn't agree with the immigration judge. But isn't it saying the final decision is the decision of the IJ, we find no problem with it? The Board finds no problem with it, you said? Yes. The final decision... That's the result. We see that all the time. The BIS says we adopt the decision of the IJ as ours. What this court has said in the Alalua decision is it's perfectly fine, perfectly fine, for the Board of Immigration and Appeals to adopt the decision of the immigration judge. Right. If, if, it adopts the reasoning also. And it specifically says that. And the court's after Alalua. This court addressed the issue in Dukranowicz, which you cited to the court. And in that case, the board did not adopt the reasoning, and this court struck that down and said... You see, in effect, under the regulation, you've got to take the whole regulatory scheme. And under the regulation, it is the IJ's decision that is subject to review in this court. Correct, Your Honor, but... So it's a distinction without a difference. Well, it's not, Your Honor. And that's what I'm saying Chenery, that's why Chenery is important. Because Chenery says the court has to know the reasons for the agency decision. And we do, because you look to the immigration judge's decision. That's what we review. You do, you review that one because the Attorney General says, but that's not correct, Your Honor, because... What says you're entitled to two reasoned decisions? That's the whole point. If the BIA has elected to just bypass, and elected to not say anything, we do review the immigration judge's decision. You do when, only when, only when the board adopts the reasoning. And that's what you said in Malalua. That's what you said in Tukanovic. Only when specifically adopted. And that has to be true under Chenery and under Goldberg v. Kelly. Because those cases say that this court cannot guess at what the reasoning is of the agency. The agency has to state the reason. If the regulation says now that the IJ's decision is the agency's final decision, then that's what we're going to review, isn't it? That's a practical matter? Your Honor, we don't believe the agency can say that by regulation. The agency cannot decide at what level of its own internal administrative review that is the decision of the agency? Is that your position? My position, Your Honor, is the agency might be able to, might be able to. I'm not saying it can't, but assuming for the sake of argument, it could wipe out the board entirely, hypothetically. And make the IJ the only review. And then you know what the reasons were for the agency's decision. My question is, hasn't the regulation done that? No, Your Honor, it hasn't. It hasn't because of the big difference there that it says we don't necessarily adopt the reasoning of the agency. And so because of that, you don't know what the reasoning is of the agency. It's not sufficient. But the regulation says that the IJ's decision is the final agency's decision. The regulation says that, Your Honor, but Chenery says that the case laws say okay. Then federal courts may now review the final agency decision, which in this context is now the IJ's decision. With all due respect, Your Honor, no. The cases do not say that. The cases in this circuit say the board can only do that if it adopts the reasoning of the immigration judge. Would you care to say some time, by the way? I would, Your Honor. Okay, thank you. We'll hear from the other side. Good morning, Your Honor. May it please the Court, my name is Jocelyn Wright and I'm here on behalf of the government. Let me first address Mr. Vanderhaar's points on the streamlining issue today. Apart from the type of decision that is issued at the end of the administrative procedures, there has absolutely been no change in terms of the type of procedures and the level of review that has been given to the alien before the board issues its decision. If the alien gets notice of the charges against him, he has an opportunity to appear before the immigration judge, have a full evidentiary hearing where he or she can apply for any relief available, and present testimony as evidence in support of that type of relief. He or she gets a reasoned decision by the immigration judge, orally or written. He or she is provided with a right of appeal, statutory right of appeal, or regulatory right of appeal to the Board of Immigration Appeals. Before the Board of Immigration Appeals, the alien still has the opportunity to file a brief pointing out all of the errors in the immigration judge's decision, which he or she feels should be a basis for reversal by the Board of Immigration Appeals. The board considers these briefs. He or she, the alien still has the opportunity to request oral argument before the board. The board can or cannot, may or may not, grant that opportunity for oral argument, but it is there. The only difference is that the board, at the end of this whole procedure, instead of issuing a full-blown opinion, issues a one-sentence opinion that says, we affirm the results of the immigration judge's decision below. The board's decision has two effects. One, it is the final agency decision that triggers the time for judicial review, and it signals the end for administrative proceedings. When it designates the immigration judge's decision as a decision for the courts to review on judicial review, there's been absolutely no change in the type of process. There's been no due process violation, because all of the due process that the alien is entitled to happened before the board even issued its decision. The other side says that it doesn't have any problem with the difference between one and three judges. Before the regulations that we're looking at, could the BIA have handled these cases exactly as they're handled now under this regulation, with three people, and simply said, boom, it's over? Had the attorney general had that type of regulation enacted, then yes. Petitioners have cited or relied on cases such as Alleluia and Tukalanich to say that the board must adopt as opposed to designate the IJ's decision before it can be sufficient for judicial review. First, at least one circuit, the First Circuit, and we 28J'd this decision earlier this week, has rejected that precise argument, and the Court of Appeals of the First Circuit has said that the immigration judge's decision provides sufficient basis for it to conduct intelligent judicial review, and we urge the court to agree with the First Circuit's finding on that point. But second, Tukalanich and Alleluia were decided in a regulatory framework that didn't include this authority for the board to go ahead and say, you can do this. And so this court apparently said that before we can say that the immigration judge's decision is the decision, you must explicitly adopt it so that we have a decision from the board. Now the regulations, according to the attorney general, the board can say, we don't need to provide a reason, we don't need to articulate a reason. It's sufficient that we have reviewed what the immigration judge has done, we've reviewed the record, and we agree that the results are correct. So you think Alleluia is not controlling? Not on that point, Your Honor, no. Mr. Vanderhoof makes a forceful argument that some of the landscape may have changed, given Alleluia's stripping of a court of appeals jurisdiction, to look at actual determinations made in discretionary decision situations. Okay. Yes, and he does rely on Gonzales-Guegos, which as Judge Trott pointed out, is no longer before the court. And I have to disagree with his characterization of what was at issue in Gonzales-Guegos in any event, because in that case the immigration judge did deny ultimately on the exercise of discretion by saying he or she didn't find extreme hardship on the record. But on the other statutory requirements of good moral character, she found in favor of the alien, she found him credible. And as to the continuous physical presence, she declined to make an explicit finding on that particular statutory requirement because she didn't need to. She said the extreme hardship denial is dispositive. I don't need to reach any other issues. I'm less concerned about the fact situation in that case than I am with the fact argument that when a jurisdiction stripping provision is operative, that the effect of the streamlining regulation is effectively to deny any appellate review of the discretionary decision at all. Okay. Well, there's several points to be addressed there. First, in Gildelau, this court has said there is no constitutional right to judicial review. And in that case, it affirmed the judicial preclusion for review for aggravated violence. And in Gildelau, the court has already accepted that there's no judicial review for discretionary denials and discretionary relief. Well, at least at the court of appeals. Yes. And again, simply because the Board of Immigration Appeals may have decided that the discretionary decision would not have been the reason it would have affirmed primarily, it doesn't mean that it was a reason that was discounted or that it would have reversed on the discretion. That's pure speculation. At this point, when they say that the Board of Immigration Appeals could have decided on a non-discretionary ground, but on a statutory legal ground that this court could have reviewed, it doesn't take care of the primary issue, which is was the discretionary decision itself supportable, and was there any prejudice to him because it's a discretionary determination. So there's no constitutional right to review or a constitutional right to the discretionary relief in the first place. The only thing that could have reached the court would have been the statutory elements, and he would have had to demonstrate some kind of prejudice, and that would have been, as Your Honor pointed out, a basis for a motion to reconsider. But again, the lack of judicial review for discretionary decisions I don't think works any type of due process violation. And it certainly isn't before the court in any of the cases that have been consolidated for argument today. Okay. Although Mr. Danforth didn't mention this in his oral argument, in the Ramirez case there is a different wrinkle, and that is that the petitioner made a different and additional set of arguments to the BIA from arguments or issues that were presented to the immigration judge, and argues that that matters even if it doesn't matter in other kinds of cases. Okay. Well, and I think I should point out that this regulation has limited application because it's been at least supplanted by the new regulation. The new regulation does preserve this option as well. So to the extent that this type of procedure still exists under the new regulation, any decision by this court would still be binding under the new regulation to that extent. So under that scenario where there's a new argument presented to the board that was not presented to the immigration judge, I don't think there's any functional difference if the court were to look at the same, at the immigration judge's decision and say, was there a material error that would require the board to consider the new arguments? In other words, if the new arguments presented to the board were so insubstantial that it didn't matter that the immigration judge had not considered them or that they were new. What you're saying is that the streamlining regulation applies to new arguments in the same way as it applies to arguments that were made to the immigration judge. The court of appeals would assume that the BIA has reviewed the new arguments for whether they were squarely controlled by existing precedent or whether they raise a substantial issue. Right. That's correct, Your Honor. And if the court of appeals decides that the board was wrong, that these were not squarely controlled, then the appropriate course of action would be to remand that to the board of immigration appeals because it erred in streamlining the case. And I think that illustrates another point that the petitioners have alluded to, which is that the IJ's decision is not sufficient for this court to review. And again, I think there's no functional difference between adopting and designating the immigration judge's decision for purposes of judicial review by the court. Because as Judge Romer pointed out, if the court finds that the immigration judge's decision is legally incorrect, then sub silencio, it has to have concluded that the board erred in streamlining the decision because, one, it was a substantial issue which should have been referred to a three-member panel for review and decision. And so there's no point in reviewing the board of immigration appeals' decision or reasons for streamlining the case because, as we pointed out, that would be the kind of one-step removed review that the Supreme Court found wasteful or duplicative in ICC versus locomotive engineers. These things normally come to us as petitions for review. Is that right? That's correct, Your Honor. And Congress created that procedure. Yes. How is that worded? We have petitions for review from final agency action. How is that wording? What does that wording say? I believe the court says that there's a petition for review of final orders of removal. Final orders of removal. Yes. And in this case, that would be the board's decision saying that we affirm the results below. And it issues a decision. That's the day, like I said, that's the day that signals. It signals the end of the administrative proceedings and triggers the statute of limitations for filing an appeal for a petition for review in this court. Did Congress anywhere require a BIA? No, it did not, Your Honor. The BIA is completely a regulatory creation by the Attorney General. And I believe those are the points that I needed to make. If there's any other questions from the court. Thank you very much. You may respond, counsel. A few points, Your Honor. One is the exhaustion is required to the Board of Immigration Appeals under 1252 D1. It can't be that exhaustion is required to the board if the board's decision becomes meaningless. It doesn't make sense. The reason for exhaustion is so the agency can correct the errors. And the agency must state the reasons that it either affirms or doesn't affirm the immigration judge's decision. What's your response to Ms. Wright's statement that we can always order the matter remanded if we determine that whatever reasons the IJ gave are not sufficient for our judicial review? Well, that's, again, assuming it can get before you. And in a great many cases, as a matter of fact, I'd probably say the majority of cases, there's going to be no judicial review in the Court of Appeals because they involve discretionary relief, which is the run-of-the-mill immigration case. Deportability is usually not that much of an issue. Pardon? You may not need to have a Board of Immigration Appeals, but you do have a Board of Immigration Appeals. It's referred to in the statute under 101A47B. And the Supreme Court has stated that when there is an appeal, a right to an appeal, which there is here, it has to be a meaningful appeal. And it also stated for a meaningful appeal to be shown, the agency must show its reasons. And it has not. My question is if we look at whatever it is that's presented to us in support of the petition and we say we cannot conduct our judicial review here because we just can't tell what happened at the agency level, don't we still have the authority to remand it back to the agency and say we need clearer reasons for what you are doing? If you disagree with the immigration judge's decision and you have authority to review that decision, correct. But the example that Judge Reimer mentioned with the Ramirez decision on the equitable estoppel issue, the immigration judge doesn't reach that because it's not before him. He raises that to the Board of Immigration Appeals. The Board of Immigration Appeals... To keep this court from looking at the brief to the BIA that was submitted by Ramirez and saying, well, no, it wasn't raised. That's not a substantial issue. End of it. Or, alternately, to say, ah, this is a SOLOC case. It was raised. BIA didn't deal with it. It goes back to the BIA for, because it didn't deal with an issue that was raised, it should have been. Because under the regulation, you can only review the decision of the immigration judge. And that's the problem with this. I understand, but this is a new argument. You have a point about a new argument being raised. Right. If the new argument is substantial, why couldn't we just remand? Because the court can review only the decision that comes before it. It's not, it can't, under Chenery, it can't guess at what the Board of Immigration Appeals may have done or may not have done on the issue that's raised before it. Okay. Let me try again. You're, in Ramirez, you argue that he made a new argument on time clock rule on equitables. Mm-hmm. On the Verona, whatever it is, stay. Correct. On Verona, stay, and something else. Okay, four issues. And we look at those issues and say they either are substantial or they're not. The issues he raised to the Board of Immigration Appeals, even though the Board doesn't reach those issues and doesn't issue a decision on it. If they are substantial, then why don't we just send it back to him? Well, the government argues, Your Honor, that you can't review that. No, I don't agree with the government. The government argues you can't. He just said we can look at it and say if they're substantial or not on a new argument, not an old argument. Well, that's not what the government stated in his brief. The government stated that the issue of whether or not they're substantial issues or not and whether some of the affirmance was properly applied is totally unreviewable under ICC and the case that's cited there. Now, if they're changing their position on that, then that's great because we disagree with that position, but in their briefs they state that's an unreviewable position. Let's make two other points, if I can, Your Honors. One is that this court, the Dunlap case, which we cited to you, Dunlap v. Bukowski, says that there's an additional reason for agency showing its reasons, not just so the court can review it, but so that the court can know that the agency has performed its task. What the Supreme Court said there is the statement of reason serves purposes other than judicial review. A reason's requirement promotes thought by the Secretary and compels him to cover relevant points and issue irrelevancies. The need to assure careful administrative consideration will be relevant even if the Secretary's decision were unreviewable. And I'd like to point in closing to Judge Tronick, your decision in the Paramaswamy case recently, where you really took the agency, both the immigration judge and the Board of Immigration Appeals, to task for not issuing reasons decisions. And the reason you were able to do that is because the Board stated its reasons there. It found harmless error when it said that, well, we think the credibility determination on using this document wasn't right. That's wrong. The immigration judge is wrong and the Board's harmless error ruling is wrong. And why were you able to determine the Board's harmless error ruling was wrong? Because the Board stated its reasoning. What was said in that decision was, by the panel in Paramaswamy, was no. The Board's reasoning, which it explained, and you'd only know that because it was forced to explain it, is absolutely wrong. It's as wrong as the immigration judge's decision, and you overturned that. Had this decision been in effect in Paramaswamy, you'd have an affirmance without opinion. There'd be a harmless error decision in the background there by regulation. But the Board's reason, which you rejected in Paramaswamy, would never have been explained to you, and that could never have been overturned. But really the underlying problem in the Paramaswamy case was what the IJ did. Paramaswamy was correct, Your Honor. And that was absolutely apparent from the IJ's record. Right. But the Board of Immigration Appeals, because it gave its reasonings and because this Court disagreed. Believe me, we wouldn't have needed what the BIA said. I agree, Your Honor. And I'd just like the Court to refer the Court to the matter of Ramos' decision, which is the last point I'd like to make, which I cited in the briefs. In that, the Board of Immigration Appeals summarily affirmed, summarily affirmed the decision of the immigration judge saying, dragnet of influence is an aggravated felony. No analysis, no anything. Then there was a motion to reconsider that case. On motion to reconsider, the Board took review of that, corrected its decision, and not only decided, no, we're wrong about that there's clearly controlling precedent there that made us summarily dismiss this appeal, but it overturned their prior decisions in matter of prente, in matter of magallanes. They'll do that. Or we do it. No, Your Honor. Yes. Theoretically, theoretically, if after getting a summary dismissal, the immigrant or the alien goes back to the Board and says, you know, let me try again to convince you, but that shouldn't be necessary. The Board should have to do what the Supreme Court in Dunlop said it must do, and if it had done that the first time, if it had done that the first time in Ramos, it would have reached the right result at that time, and that's the reason that this procedure, we believe, is unconstitutionally illegal. Thank you, counsel. Let's then move to the individual cases, and according to your list you'd like to start with Sedano-Vieira. We're going to wear you out today. In America, take two minutes if I could for rebuttal. We won't have six minutes total, but I'd like to do that if I can. The issue before the Board of Immigration Appeals, the immigration judge in the Board of Immigration Appeals in Sedano, was whether or not the fundamental issue was whether or not there's an aggravated felony conviction here. We believe that there is not for the reasons we set forth in the brief, and I want to go through why we believe that and why it's important, Your Honor. The Board of Immigration Appeals affirmed the immigration judge's decision in this case, and in the immigration judge's decision it admitted the information in this case, that is the charging document, the complaint in this case, and the immigration judge used that information, used the complaint, to establish an element of the offense of aggravated felony. Why does one have to get there? Controls. We don't think it does, Your Honor, or two points to that. We don't think that that decision, well, we think the decision's wrong, but we know that you're bound by that decision, so I concede that. And we've also applied it in the immigration area and in other civil areas. So why isn't that to sort of end it? Because of the way the statute is read, Your Honor, in terms of the Nevada statute, what the immigration judge found in that case was that there's used information to find the act. And the reason this is important is that if you look at the Nevada statute. I know. That would be resorting, in effect, to the categorical approach. Correct. My question is why one even gets the modified, excuse me, categorical approach. My question is why does one need to get there because the Nevada statute is essentially parallel to the California statute. We've already said that rude and lascivious conduct on a minor is per se sexual abuse, period, end of it. We don't care what the specific act was. It's just per se sexual abuse. That's correct, Your Honor. But the reason that in this case his consideration of the information is important is that the immigration judge found the specific act based on the information. And let me, one second, I'll try to relate this to your question. That definition then, because of that act, the complaint alleged a crime of sexual assault. Crime of sexual assault cannot be found under the Nevada statute. It's specifically exempted. And so what happened in that case is the use of that information to say what the act was, then results in the immigration judge finding a crime of sexual assault. Crime of sexual assault is specifically exempted, specifically exempted from the statute there. And so you have a situation where the court found he was convicted for this crime of sexual assault, but Nevada statute 201-230 specifically says you cannot be convicted in sexual assault for that act. I'm sorry, you can't be convicted under this statute for sexual assault. And that's a very, very important factor, Your Honor, that would be not true if, in fact, it was all on force with the California statute. The California statute does not have that provision in it, and that's a very big material difference in this case because of what the immigration judge found. I'd like to reserve some time. I'll be sure. Let me address the sexual contact provision, which I think petitioners are urging the court to find in order to resort to the modified categorical approach. And I think in Barón Medina, this court categorically rejected the requirement of sexual contact in order to find sexual abuse of a minor. The plain terms of the Nevada statute in this case, losing to the child under 14, I think speaks for itself, and there's no need to resort to any of the modified categorical approach because, as the court found and as the board found in Rodrigo's-Rodriguez, the plain, common-sense meanings of the terms would control and is sufficient for the court to conclude that the crime with which he was charged and convicted does involve sexual abuse of a minor. And, again, in this case, there's no- the terms of the statute require that the child be under 14, and so even a defense like the age difference was too narrow doesn't even apply in this case because he was 28, Mr. Savano was 28 when the crime occurred. What difference does it make that the statute in Nevada says other than acts constituting the crime of sexual assault? It shouldn't make a difference, Your Honor, because, as the court found in other contexts, I think it was a criminal sentencing context in Wood, and other circuit courts have also found, that any time there's sexual contact between a child and an adult, there's an element of- Whether it was an assault or not, is what you're saying. Yes, there's an element of violence and physical- there's a threat of physical force to be used in order to ensure the child's compliance with what the adult wants to do. And so, again, that leads into also another point, which is that this is also an aggravated felony under the crime of violence portion of the aggravated felony statute. So there are two preclusions to this court's review of Mr. Savano's removal order in this case. One is aggravated felony because what his crime was does amount to sexual abuse of a minor under the categorical approach, and even under the modified categorical approach, as we explain in our briefs. And also because his conviction is also a crime of violence because it inherently calls for violence or the threat of violence to be used when an adult has sexual contact or has any type of sexual touching with a child. Even if you exclude assault by the statute? Not under the crime of violence, no, but I don't think that's necessarily- I don't think that informs the inquiry under the crime of violence analysis. The sexual contact is only relevant to sexual abuse of a minor because I believe the petitioner's argument is that the use of the word abuse requires contact in the conviction, as an element of the conviction, which again, this court and the board have both rejected. And the simple overbearing of the will of a minor child establishes the violence? The crime of violence, yes, Your Honor. If there's any others. Thank you. A couple quick points, Your Honors. Crime of violence was not charged. And so that's not before you. The government can't argue now that he's deportable for crime of violence. That was not a charged offense and the immigration judge didn't find that. So in the record, I think if you review that, and we say that in the briefs, the Immigration Service never charged a crime of violence. So under the law, the circuit couldn't affirm the finding based on it now believing it's a crime of violence. And for the reasons we state in the briefs, we don't believe it was a crime of violence. But as to the sexual abuse of a minor, which is properly before you, I would like to make two points. One is that at the time of the immigration judge's decision, and I think this is crucial here, the only controlling precedent was the Board of Immigration Appeals decision in matter of Rodriguez. That was the only controlling precedent that had to be what the board relied on if it formed a recent decision, which we don't know, to summarily affirm for the controlling case law. But Rodriguez-Rodriguez, it was improper to hold that Rodriguez-Rodriguez compelled that finding here because Rodriguez-Rodriguez, the statute issue there, the board said that you apply 3509, the federal statute in that case. And the statute at issue there, the 3509, required sexual contact or exposure, neither of which were an issue in Mr. Sidano's case. So it was error for the board to find under Rodriguez-Rodriguez that there was sexual abuse of a minor. However, the board had to find at that point that there was no sexual abuse of a minor and should have terminated the case. Despite the fact that it's obliged to follow a controlling Ninth Circuit precedent. But there wasn't a controlling Ninth Circuit precedent under the Board of Immigration Appeals decision in KVD, which was in existence at that time. The Board of Immigration Appeals held in KVT that you do not follow a circuit court precedent in the criminal context. The board subsequently reversed itself. But the importance of that is the time of the immigration judge's decision, it was impossible for the board to find lawfully, that is, under controlling case law, that it was an aggravated felony. Now, the government argues, well, Barron-Medina controls because the Board of Immigration Appeals reversed KVD subsequently. But we submit to you this is very similar to the Guadalupe Cruz case, where the immigration judge made an error and applied the Estrella decision, sorry, 309C5, prior to the time that it should have. And this court said in Guadalupe Cruz that the Board of Immigration Appeals has to apply the law in effect at that time. And it can't bootstrap something two years later, a year later, to say, okay, well, now it's in effect. 309C5 in the Guadalupe Cruz case, or Barron-Medina now, in arguably in this context, and say, well, once we're before the Court of Appeals, we can apply Barron-Medina and we can correct the error. What Guadalupe Cruz says is no. It's crucial that an individual get a fair hearing. Fair hearing is the case was decided correctly at the time. The correct case was decided incorrectly at the time under Rodriguez-Rodriguez, clearly. And under Guadalupe Cruz, this court has to find that it can't now, the agency can't now argue that it should apply Barron-Medina. That would be contrary to the holding of Guadalupe Cruz. Thank you very much. Thank you, counsel. According to your schedule, the next case you'd like to present is Ramirez. Is that right? Okay. May it please the Court, Victor Nieblas for Petitioner Alejandro Ramirez. Your Honor, the issues in this case, first and foremost, I really want to outline why I believe the Affirmatives Without Opinion procedure was improperly applied to my case. And once we discuss some of the issues that we raised with the BIA, I think we'll know and we'll find out really the problems with this procedure. The immigration judge just simply denied the case based on 309C5. Denied it when there was no guiding principle. NJD had been vacated. They had nothing to hold on to, yet denied the case based on 309C5 with no rationale, no discussion. When we go up to the Board, we raised several issues, one being that my client was arguably eligible for the Barahona-Gomez settlement discussion. Also... Nowhere, right? Excuse me? That gets nowhere. No. And I admit that it doesn't fall squarely under the settlement. I do. Okay. And I'll move on. But we also raised issues fact-sufficient to really form an equitable tolling argument. Your brief to the BIA doesn't mention equitable tolling, equitable estoppel, any fact told to you by anybody, relied upon by anything at all. You just simply say it was unfair to do it. Yes, Your Honor. I mean, at most. I agree. But the Sokol-Gonzalez decision in that case... You have to have something. You have to be able to discern the argument, at least in the brief. Well, Your Honor... It's not discernible. Your Honor, I would disagree because the Sokol-Gonzalez decision says that we hold that even though Sokol never specifically invoked the phrase equitable tolling, the facts were sufficient to raise the issue. Ben, the facts were mentioned in the brief that make it discernible that what you were really doing was making an equitable tolling argument. Your Honor, the facts were clear. My client had filed a motion to reopen a year before the enactment of the implementation of 3095. The judge granted it. He had a hearing, September 26th, before IRAIRA was enacted. And the judge said, yes, you are eligible, but we're going to find a date, a year in advance in the future. My client raised those facts, said that it was unfair for that to happen, that the statute shouldn't have been applied retroactively. And that, Your Honor, I think really outlines what equitable tolling is all about, that the implementation of this date can be equitably tolled. It can take care of the retroactive. I agree, Your Honor. So that's out. I agree, but for the purposes of the AWO, when that decision was before the board, the board, again, didn't raise it at all, didn't discuss it at all. Why? Because we know they gave a one-line decision. The issue of repapering was another aspect that the board raised. No, Your Honor, and it doesn't have to be raised. Repapering is mandated by the board that they have to act and repaper individuals who are eligible. It's written in a memo. It's also a board policy directive that they have to repaper individuals and do it. Even the board in and of itself said we can streamline these repapering cases. It can. Excuse me? I understand it can. And, again, because there was no review, and my position is that the board didn't review because if they would have reviewed this case, then they would have said this person is eligible for repapering and we should administratively close this case. Your Honor, the issue is very important when it comes to equitable tolling. I believe it was raised as far as the facts in the brief to the BIA. Did the BIA discuss it? No, they did not discuss it. That's the difference with SOCOC because in the BIA they pretty much discussed equitable considerations, didn't they? Your Honor, the board didn't discuss it at all. They gave us a one-line decision affirming the decision of the IJ, and the IJ did not hear these arguments. These are new arguments. So, therefore, it's clearly under the procedures of AWO they shouldn't have been applied in this case because of the new arguments. Also, the fact that my client paid $110 to hear a review to have an appeal, that should serve for at least some right or at least some example that his appeal should be heard and reviewed, and there should be some discussion. Sorry. Your Honor, those are the positions. I do want to reserve at least one minute for response. All right, counsel. Thank you very much. Ms. Wright. Again, Jocelyn Wright for the government, Your Honor. The equitable tolling argument, as the court has pointed out, as a petitioner, was never raised before the board. And if properly construed, I think it's simply the retroactivity argument recast as equitable tolling. And as the court has also pointed out, RAM has taken care of the retroactivity argument, and it's clearly found that 309C5 applies to OSCs and NTAs issued on or before the enactment of ERIRA. The other cases, for instance, Guadalupe Cruz and Odorola, those cases don't apply either or those exceptions don't apply to this case because those cases stand for the proposition that in cases where the alien files a suspension application and has a merits hearing on that application before April 1, 1997, which was the effective date of ERIRA's provisions, then the IJ can't apply the stop time rule to deny relief. But in this case, the IJ applied the stop time rule after April 1, 1997. In fact, his merits hearing wasn't heard until March of 1998, and so the law squarely mandated the IJ to apply the stop time rule in Mr. Ramirez's case. Now, he makes much of the fact that he filed a suspension application with his motion to reopen. That was, I believe, filed in September of 1996, and he had a master calendar hearing before the immigration judge four days before ERIRA itself was signed into law. However, that makes no difference because when he appeared before the IJ in September of 1996, he didn't make any requests that his motion or his suspension application be adjudicated that day. He didn't tell the IJ he was ready to go forward as he now tells the court he was. He made no objection to the IJ continuing his case for another year or so because there was no room on the IJ's schedule for a full-blown merits hearing. And again, there's no reasons apparent in the record as to why the hearing was further continued for another year. But again, there's nothing in the record also to say that Mr. Ramirez ever lodged any objection to the further continuance of his hearing. In fact, it seems that so long as he was in the United States and under a protection of a state of deportation, he didn't seem to care when the hearing was going to be held so long as the suspension application was filed in pending. Now, the fact that by operation of law he was now eligible at the time the merits hearing was held doesn't mean equitable tolling or equitable assemble should be applied in this case. And in fact, equitable tolling can't apply to an effective date of the statute, which 309C5 and Ramirez's April 1, 1997 implementation date are. They're effective dates which equitable tolling has absolutely no application to. And the one other issue that I wanted to address was the repapering. We have argued in our brief that he failed to exhaust this issue, and so it's not before the court properly. And second, it was only a proposed regulation. It never became final. It got caught up in the transition between the administrations, and so a final rule was never published, so there's no regulatory right to repapering in this case. He says that there was some kind of internal memo between the board or the INS to say that repapering should be done if an alien is eligible, but there's absolutely no showing in this case that he was eligible for cancellation at the time that his appeal was before the board because he entered in 1989, and he didn't file his appeal before the board until 1998, so he was short one year eligibility for cancellation. And so the repapering provisions don't necessarily apply because he wasn't prima facie eligible on the face of the facts in his case. And last, again, our position would be the court would lack jurisdiction to review the decision not to repaper in any event under Section 242G of the Immigration Act, which by its terms and as the Supreme Court found in AADC, prevents the court from reviewing an agency's decision to adjudicate a case, and that would also apply to the immigration judge's decision to continue a case, which is within his discretion if his schedule doesn't allow a full-blown marriage hearing, even if that is a date the alien wants it done. If there's any questions from the court. Thank you. Thank you. Your Honor, I want to address a couple of points. First, as to the eligibility for repapering, I think counsel is entirely wrong and mistaken. Cancellation for the repapering aspect requires 10 years. My client by that time had 10 years, had a United States citizen daughter and two LPR parents. Clearly, he was prima facie eligible for repapering. There was no issue as to that. Again, the internal memo from the board said that the board should have acted, but because they didn't review the decision carefully, simply didn't look at the issue. Second, as to no objections, my client appeared before the immigration judge four days before. My client relied on the judge's granting of the motion to reopen, his statements on the record that we're ready to go. He had no reason to believe that he was not eligible for suspension, and the fact that his case was sent over almost a year and a half later, it clearly was beyond his control. I practiced in immigration courts in Los Angeles, and there was no way that we could have filed a motion to advance. Interestingly enough, in Guadalupe, Cruz, and Ostrero, those cases started after Ramirez's case in December of 1996, yet they received their merit hearing in March of 1997, way before that decision. So that is the aspect that my client is saying that is unfair, that violates due process, and really enters into what we know as the equitable tolling aspect that we want. That implementation date to be told so that my client can have that date, it was beyond his control that the judge send it out, no reason whatsoever, and he never had an opportunity to present a merit state. He was ready to go on September 26th, but the judge sent it out. As far as the exhaustion issue, real quickly, when we filed a petition for review, we also filed a motion to reconsider with the board, raising the same issues.  In the decision, they said they agreed, and I can provide it to the court, they agreed that they should have repapered the first time around. They agreed. In your case? Yes. They agreed that they overlooked it and they should have repapered. That in itself shows that the AWO procedures are flawed. They didn't address the equitable tolling argument. So, again... You caught me a little off guard here. Recently, the board issued a decision saying that they had made a mistake and they should have repapered the first time through. Yes. Do we have a copy of that? No, Your Honor. This just happened last week. And what effect did that have on our resolution? Your Honor, I believe that it doesn't because, one, they didn't address the suspension aspect, which is what I'm asking for. They didn't address those arguments. Two, even if they agreed that they repapered, as counsel stated, repapering is a potential relief with a higher standard. So, am I correct in assuming your case is then still alive? My case has been administratively closed. But what is it now? Is it reopened? No. It's administratively closed by the BIA for repapering purposes. So what is the result of the decision you got saying we made a mistake? They said we made a mistake, we should have repapered, we're going to administratively close and wait for these regulations to be published to see if you're eligible for repapering. So you still have a possibility of prevailing in that? In that higher standard, yes. So it's closed with an asterisk? Yes. Yes, Your Honor, that's how repapering works. And, again, we've been waiting for the regulations for four years. It's the BIA. Excuse me. Commissioner Venditti. Your Honor, but, again, we believe that our primary issue was suspension, that we were eligible for suspension, and that issue was not addressed by the Board at all, ignored, again. So as far as exhaustion, the Board has decided that they won't deal with that issue with ECRO-Votoli, and we're still within the 30 days to consolidate the last decision with this case. But it does move to the repapering aspect of things. Sounds like it does. It removes it completely. The repapering, yes, but not the suspension. Not that, but you agree that it moves to the repapering. Yes, it does, Your Honor, and it also establishes that the AWO procedures are flawed, and they even agree to it. Hear all that. Thank you. Thank you, Counsel. Ms. Wright, do you have anything you'd like to tell us about this recent decision that we don't know anything about? Well, if either side thinks it's important to fill us in on some major development of this case, please do so. Otherwise, we'll hear the next case. Huerta Guevara. Good morning, ma'am. Sleet to the Court. My name is Cori Nayosi, and I represent Maria Huerta, the petitioner. If I may, I'd like to reserve two minutes for rebuttal. The immigration judge below made a legal error in concluding that Ms. Huerta's prior guilty plea to violating an Arizona revised statute constituted an aggravated felony under the INA, namely a theft offense. In order for Ms. Huerta's prior conviction to be a theft offense under the INA, her prior conviction must include the three theft offense elements that were set out in this Court's Corona-Sanchez case, taking or controlling property without consent and with the intent to deprive the owner of that property. Regarding this last element of intent, the statute to which Ms. Huerta pled guilty, Arizona revised statute 13-1802, did not require her to admit to intent to deprive in entering her guilty plea. And what's more, in fact, in entering her guilty plea, she did not make that admission as the record of conviction revealed. What was the intent that was involved? I don't know what the intent was. We don't know which subsection. You know what it wasn't, but you don't know what it was. That's correct. We have a statute of conviction that includes six subparts, four of which don't require intent to deprive. And if the statute of conviction is divisible and would criminalize conduct that goes beyond the INA theft offense, then categorically the prior conviction doesn't constitute a predicate offense for removal. And so the inquiry, I don't believe, focuses on what was the intent, but whether she had to plead guilty to that requisite intent under the INA. The Arizona Supreme Court in a decision, an en banc decision, Steve V. Morris indicated that there are four subsections under which one can be convicted in 13-1802 that don't require the intent to deprive. And the government's reliance on this court's decision in Rondalla is misplaced. In that case, the statute of conviction categorically required all of the elements of the INA theft offense. Here we don't have that same situation. If the statute of conviction doesn't require intent to deprive, then the removal order can't stand unless we can find something in the record of conviction, not just something, excuse me, judicially noticeable facts in the record of conviction that establish Ms. Huerta pled guilty to every element of the theft offense definition under Corona-Sanchez. If I understand you correctly, the government's position is that that something comes from a judicial admission. In the brief, though, would you give us your views as to why that doesn't suffice? First of all, I don't agree that Ms. Huerta, a pro se respondent in an immigration removal hearing, admitted to that charge. Well, I'm not talking about her pro se. I'm sorry. I'm not talking about the admission that she was removable. I'm talking about the judicial admission in the brief. Okay. The modified categorical approach allows the court to look at the record of conviction for facts that relate to admissions made in the context of entering into the guilty plea. What counsel may say about the circumstances of Ms. Huerta's offense in a brief before the BIA don't inform the court of what she said when she took her guilty plea. Is it limited to the guilty plea, or can we simply look at judicially noticeable facts? And why wouldn't an admission made in a brief filed before the BIA have the same binding effect as an admission made in connection with the guilty plea? The admission made in connection with the guilty plea is necessary because we need to know what she said when she entered the guilty plea. The factual circumstances, which are possibly what's described in the BIA brief, don't tell us what she said when she was before the Arizona State Court. Let me ask the question a different way. Are you familiar with the concept of judicial estoppel? Yes. Okay. Why can't we consider that admission as essentially under the rubric of a judicial estoppel? She has taken a position in litigation which is now contrary to the position that she takes before us. And why isn't she bound by that admission? First, I don't know. I don't agree that the admission in the BIA brief is dispositive of whether she was – whether all of the elements of the INA theft offense were admitted. But, for example, in the Corona Sanchez case, granted that was in a sentencing context, but the defense attorney told the district court that the offense involved there was the theft of cigarettes and beer. And when the case got to this court, the court did not say, well, we know that Mr. Corona Sanchez stole beer and cigarettes, and, therefore, we can rule out some of these subsections of the California statutes that are – But we also had – Make it overbroad. We had a wobbler, and we had a separate sentencing statute for which there were felony consequences if you had a prior petty theft conviction. Here we have a very straightforward common law crime of receiving stolen property, and she has made an admission that she took a car without permission. And I'm wondering – and she acknowledges that in her brief. And I'm wondering why that isn't sufficient under Taylor and Corona Sanchez for us to conclude that she is, in fact, an aggravated felon. What we need to know is what she said during her guilty plea because – She doesn't dispute before the immigration judge who asked her specifically about that prior Arizona conviction? I think that she was pro se before the immigration judge and – It's not a difficult question. Either you were or you were not convicted, and that was the question he asked. And she said, I admit it. She admitted that she was convicted, but she didn't admit to the legal conclusion that the immigration judge has drawn from that conviction. She agreed it was an aggravated felony? Before the immigration judge? Yes. Well, I think that there's two ways of looking at what she said in that brief. In one way, she agreed that it was an aggravated felony. Right, but I don't think that that would preclude this court from reviewing whether that is, as a legal matter, correct. In other cases, the court has looked at admissions below and – What she says is, I borrowed the car and intended to give it back. I mean, if you get exactly what she said, right? That's in the brief before the Board of Immigration Appeals. I just want to make one other point, though, is that the government is asking for this court to affirm the immigration judge's decision based on what the immigration judge had beforehand at that time. But the issue that we have to struggle with is, do we have – we have jurisdiction to determine jurisdiction. And the question is, is there sufficient evidence before us to determine whether she's an aggravated felon based on the record presented to us? And if we conclude that there is, then isn't that the end of the case as far as your client is concerned? That would be correct. Okay. Why don't we hear from the government, and you can respond. Let me first address the argument that a modified categorical approach is even necessary in this case. We don't think that it is. In Korona Sanchez, the en banc, 9th Circuit, decided on a generic definition for theft defense, which required three elements. One is the taking of property or the exercise of control over the property by the defendant. And how do we know there was intent here? In this case, Ms. Huerta was convicted of possession of a stolen vehicle. Right. And because it was a stolen vehicle, the fact that it was stolen, I believe, is sufficient to meet the intent requirement because it was a stolen vehicle. Well, the case upon which you relied, which is, you know, the 7th Circuit, is it Hernandez? I'm sorry, I'm losing. It's Hernandez, M-C-A-N. Hernandez. There was a specific stipulation, I think, or something, in which the intent element had been found. Here we don't have that. And I'm hard-pressed to see how, just from looking at the Arizona statute, we know that she intended to steal the car. Well, and I think the argument that she's making to that is a glorified borrowing, which would implicate an intent to return under the board's division. We don't know what it was, and we just know she possessed a stolen vehicle.  Well, I think, again, the judicial admission would tell the court that, yes. That's not the categorical process. Then you're slipping over into the modified. I don't understand why you think we don't need to get there. Because under the general definition of theft, defense under Corona-Sanchez, which, again, is squarely with Hernandez, M-C-A in the 7th Circuit. Except for the fact that I just said it. Except for the intent. Okay. Well, I think, again, the state statute has a different statute for things such as glorified borrowing or de minimis takings. And at least in the Arizona statute that's at issue before this court and under which Ms. Huerta was convicted, at least four, I believe, of the subdivisions do require that intent. And of those four, two are the ones that apply to her conviction for possession of a stolen vehicle. And so I think to that extent. Are there any subsections that would not apply? I believe the last subsection deals with the theft of services, which would not apply in this case. Well, yes, but it's Corona-Sanchez. And you know what I think about that. But anyway, Corona-Sanchez said that theft of services and aiding and abetting, which equally is true of the Arizona statute as they were in California, render the statute outside the generic definition or conviction under the statute outside the generic definition. Well, and that would then we would fall back on our alternative argument that even under the modified categorical approach, Your Honor, this is still an aggravation. Okay. If that's true, how does the judicial – how does the statement that is made in the brief rise to – how come it is a source that is as reliable and should be as acceptable as a statement under oath by the person in a guilty plea transcript hearing, for example? Again, when Ms. Huerta was before the immigration judge, the immigration judge was very careful to make sure that she understood the proceedings and what was going on. He even asked her at one point that, you know, I have the record of conviction here that the INS is saying you're charged with this crime. Do you want to go ahead and see it and review it? And so those protections were properly observed by the immigration judge. And with those protections and even knowing that – and with a full understanding of what was going on in the proceedings, as evidenced by her comparatively sophisticated understanding of what forms of relief would be available to her, she specifically admitted that she was convicted of this crime. Sure. Well, we know that. And that she also conceded deportability as an aggravated felon, Your Honor. That's true, too. But whether she is or isn't an aggravated felon is an issue of law. It's not a factual issue. Yes. And, again, I would agree with Judge Thomas' characterization that with this court's jurisdiction to determine its jurisdiction, it can revisit that issue on its own. Sure. But, I mean, are you relying on the statement or counsel in the brief for that purpose? Not completely. I think the conviction record that was in the record, the probation document that was in the record, which says that her conviction with possession of a stolen vehicle is also enough. Yes, Your Honor. I believe those were all the points that I wanted to make, but thank you. Thank you, counsel. Thank you. I think the government is finally seeing the light here that there is no intent requiring the statute and that the record of conviction doesn't contain an admission in this where it acted with the intent. The statements in the BIA brief were by counsel describing factual circumstances of the offense. They were not an admission made in connection with the preparation of a judicial document, which is what this court in the past has looked at. The last thing Ms. Wright told us about was the probation document. What value is that? The probation document simply states that the offense was entitled possession of a stolen vehicle. And that accomplishes nothing as far as you're concerned? Well, it doesn't include the intent element. It doesn't include... Stolen. Stolen almost always means an intent permanently to deprive. Well, we don't have an admission that Ms. Wright knew that the vehicle was stolen either. Didn't she tell us later she stole it? She took it? I'm sorry? Didn't she admit she took it? In the BIA brief before, through counsel, she was describing the circumstances of the offense. She took it. That's correct. But she didn't know it was stolen? The... I think the question should be focusing on what is a permissible document for the court to look at under the modified... What about the probation document? Well, the probation document only says that she possessed a vehicle that was stolen, possession of a stolen vehicle. It doesn't include the requisite, I possessed it with the intent to deprive. Even if you wanted to, excuse me, accept the Seventh Circuit's analysis and Hernandez-Mencia, that if you admit that you know a vehicle is stolen, then you have the requisite intent. She doesn't have that statement that she knew the vehicle was stolen. It's not contained in the probation revocation hearing transcript. Thank you. Thank you, counsel. Sedano-Fiera, Huerto-Guevara, and Alejandro-Ramirez are ordered to submit. We thank you all very much. We'll do our best to get you a decision as quickly as we can, consistent with finding the right answers.
judges: Trott, Rymer, Tallman